Morning, Your Honor. May it please the Court, Counsel, I represent Ray and Denise Rhone and Denise X. Your name, please. My name is Michael J. Sreenan, S-R-E-E-N-A-N-E-R-H-O-N-E-R-D-E-N-I-S-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E-R-H-O-N-E-R-D-E-N-E- This is a fairly straightforward case based upon a simple, undisputed set of facts and a contract. In this case, the contract is a Title Insurance Policy. Rones closed on their home on August 1, 2006 and received the title insurance policy we're talking about today. At the time of the closing, all the parties knew that there was this issue with regard to back taxes. That's not something that's disputed today. Let's be clear about that because it seems that the Rones protected themselves against back taxes arising in 2006 by that reproration agreement, but they didn't protect themselves for those same taxes that might have arisen in the very same way, that is by an assessment of the property as improved as opposed to vacant for 2004 and 2005. And for the life of me, I can't understand why the agreement didn't include 2005 and 2004. 2006 taxes were just straightforward taxes because taxes are paid a year in arrears. At the time of the closing, 2006 taxes were going to be paid in 2006. 2007, the parties knew that it was underassessed, so we put together this escrow. Stop right there. When you knew it was underassessed, do you think that underassessment applied only to 2006 or do you think that underassessment applied to 2005 and 2004? We didn't believe that it applied to 2004 and 2005. And why not? Because under the statute, the property tax code 9-270, it said that a good value or a good faith purchaser for value is not subject to the tax. Right there. Are you putting yourself squarely on inland so that we, in fact, should remand this case to allow an evidentiary hearing, if not a full-blown trial, to determine what the good faith knowledge was that the good faith purchaser was subject to the tax? The good faith purchaser was on the part of the Rohms regarding 2005 and 2004. It's admitted that the Rohms knew about the improper assessments. How do we get the good faith? They did not know that it would end up being a lien on their property and that they would be responsible. They thought by complying with section 2-70 and notifying the assessor that the tax, you know, that this was improperly assessed, they would be shielded from liability. So who would end up paying those taxes? The county would eat those taxes. Wait a minute. Let me interject. Why would they necessarily be shielded just because they had revealed, quote, unquote, disinformation? The language of section 2-70 says that a good faith purchaser, without notice of the tax, doesn't have to pay if they provide this notice. The notice was provided, but the county took the position in inland that if you have notice of the improper assessment, that's the same thing as having notice of the tax. That wasn't known to the Rohms. That wasn't known to me as counsel for the Rohms in the closing. Now, had the title company not provided insurance over the taxes, then there would have been a different result. What result would have been different? Then they would have said there has to be some protection for the possibility of back taxes. But the policy didn't exclude back taxes. The policy excluded taxes for 2006 and subsequent years. And when it says for 2006, doesn't it include additional language not only for 2006, but assess in the future? General taxes for 2006 and subsequent years, which are not yet due and payable. I mean, what do we look to? What controls are the nature of these taxes as being either predating 2006, or should we look at not yet due and payable, which is admittedly not yet due and payable for 2004 and 2005? What really controls? Well, first, it's the language that's provided here. If you look at the actual assessments, they say that there are taxes for 2004, 2005. When First American first denied the claim, they said, oh, it's excluded under this B1, general taxes, you know, not yet due and payable. If that were to be drafted properly, according to what First American is saying, why doesn't it just include general taxes? General taxes, which are not yet due and payable, instead of saying general taxes for the year 2006 and subsequent years. I was looking at that language as the attorney representative saying, we're covered because if there are back taxes, we have title insurance against that. Well, of course, First American first denied the claim. So that suggests that it's not for years 2004 and 2005 that are due and payable, because if, in fact, had been properly assessed in 2004 and 2005, then there would be interest owed and everything would back date to that year. But, in fact, the taxes are not due and were not assessed until 2007, and they weren't really due and payable until 2008. So we get back to what really controls, you're saying that the general taxes for the year 2006, if it's, if there are taxes for years predating 2006, then it's not covered by this language? Is that what you're saying? That's exactly what I'm saying. If you were to walk into the county office and say, what are these taxes for? Well, those are for the years 2004 and 2005. They're not 2006 taxes. And if you were going to, into the county office and ask, when are they due and payable, what would they say? They'd say these were due and payable in 2008. Right. Not 2004 or 2005. So we get back to the same predicament. But it sort of raises an interesting question, and that concerns the nature of, you say it's a contract action between the Roans and First American Title. Certainly that's true, but it's an insurance contract, and an insurance contract, it isn't just by virtue of a contract. It is, you examine the risks the contract is meant to insure against. And oftentimes it's a risk unknown to either party. And one of the two parties says, I am willing to take on that risk, but you have to pay me this premium for my taking on that risk. But here the risk is not unknown to either party. It's certainly, you're right, it's known to First American Title, but it's also known to the Roans. So why should the contract insure against a known risk known to both parties? And I understand the Roans saying, well, we thought that we were protected by virtue of our disclosure, but it still doesn't address why this contract should be read in a sense, in a way to cover you for a known risk when it's not. And the risk is known to both parties. Well, based simply on the language of the policy, it's clear that this falls within the four corners of this policy. It is a lien or encumbrance or defect in title under the definition by the Illinois Supreme Court. And again, they had every opportunity to exclude coverage, and that's what the McLaughlin case says. This is something that they could have determined and they should have determined, and if they didn't want to cover, they should exclude coverage. Now, what they have written here doesn't exclude coverage. At best, it's ambiguous, and those exclusions are to be construed narrowly against the insurer. What if they had excluded them? Then it would have been on the Roans to make other... So are you saying that the Roans relied on, at closing, the possibility that First American Title was going to exclude that risk or was going to include that risk or accept that risk unto itself? Absolutely. I'm sorry. They were relying on that occurrence, and if it hadn't happened, they'd be out of luck? Well, the point is that if the Roans were really concerned about where that risk was, they probably would have taken steps to protect themselves, as opposed to saying, well, let's go to the closing and see whether or not First American Title waives this exception. If they waive the exception, then we're covered. If they don't waive the exception, then what? The Roans have got to come pull that money out of their own pocket, because they haven't forced the sellers, who are really the responsible parties here, to assume that liability, which they receive the benefits of. Essentially, the contract said, you will convey a title subject only to 2006 taxes and afterwards. If they did not come in with a title insurance policy that said, okay, we're going to do this, we're going to cover taxes except for 2006, which isn't due yet, and prior years we're insuring, if they didn't do that, they would be in breach of the contract. So it would simply be seller, title company raises an issue with these back taxes. How do we resolve it? You know, we can look at the neighbors and see what they've been taxed at, and you're just going to have to put in enough money to cover it. That's what would have happened. If the title company did not appear to insure over this defect in title, it would have been, okay, how are you going to resolve this open issue? And the title company would have been off the hook, and then it would have been a private matter between just the seller and the buyer. So why, if it had been a private matter between the seller and the buyer, why weren't the sellers brought into this case much like Inland was, just much like the parties in Inland? They brought in everybody. And why weren't the sellers brought in? And if they'd been brought in, this appeal may never have happened because the parties would have seen maybe the writing on the walls and said, you know, we know where the responsibility really lies. And it lies with the sellers, because they paid taxes far less than what they should have paid, given that the land was assessed as vacant land and not improvement. Well, the sellers are still liable, but I thought it was so clear under this that the title insurance company was liable. To bring in the sellers would have, you know, extended this case. You know, there might have been factual issues. Whatever. It looked to me like there was clear liability. That's why there's a Section 155 claim. And we really, you know, brought this to a head very quickly. And I didn't want this dragging on, you know, for years, because we had a bunch of different parties. And the title insurance company would be free to go after, you know, the actual seller. But there's still Let me ask you this, because we started with Inland, and we started with, this was a summary judgment, but it was a summary judgment, a cross-summary judgment motions, and yours was denied, and First Americans was granted. And it's been over review here, but did the trial judge explain his ruling? The trial judge simply said that, based upon exclusion, 3D. Okay, 3D. And that was the basis of his decision. There was no other explanation other than 3D. But you did mention, you know, the good faith basis or reliance or, you know, the good faith basis. Action on the part of drones. Does that, in itself, preclude us from, should we find in your favor, from granting summary judgment in your favor, and remanding it for whether or not there's a basis for that good faith assertion that you make in your brief? As I indicated, for an evidentiary hearing, much like in Inland. Inland, the buyers won at the trial level, and then the owners said, well, you know, I think notice dictates the outcome here, and we're going to remand it for a determination of when the buyers had notice, much like here, whether they had noticed that the property was under-assessed by looking at similar property in the neighborhood, and if so, they might end up losing. I don't think there's any reason for remanding, because the drones concede that they had knowledge of the property, and they didn't have knowledge of the improper assessment at closing. They didn't have knowledge, and in fact, believe the opposite, that they wouldn't be responsible for the back taxes so long as they complied with Section 270, which is what they did. And then the fact that the title company went along with that reinforced that belief. One final question, for me, anyway. Regarding, you know, the fact that the title company went along with the lack of knowledge, or the admitted knowledge on the part of the drones that the property was under-assessed, does that in any way take this case out of Inland, in that, given that Inland was going to remand for that determination of knowledge on the part of the buyers, and then the case was going to turn on whether they had knowledge or not. Here, where you have an admission that they, in fact, had knowledge, and that sort of undercut their position, the drones position, that drones stands in their favor. Absolutely not. The way I understand Inland is that the court said, let's remand to determine if the buyers had notice of it, because if the buyers are good-faith purchasers without notice, then the county doesn't have any basis for going after those taxes, and they're protected by Section, you know, 9-270. Here, and then, so let's say they went back and they determined, okay, the Inland buyers didn't have notice. All right, well then, you know, it's done. The tax isn't owed, and it's not a problem. If they determined that there was notice, then they say, okay, this is a lien, because the county can go back and assess the property for it, and they're protected. So it is, in fact, a defect. And your position would still be, then, that the insurer who gave the title insurance is responsible for the taxes, not the drones? That's correct. I had a question, just listening to this discussion. It appears, with Justice Garcia's dividing, in terms of the exclusion, the word subsequent years, and not yet due and payable, to have the not yet due and payable apply to any taxes that were assessed, either in 2006, or even if they weren't subsequent to 2006. Listening to you, and reading your brief, and McLaughlin, and Inland, is it your position that subsequent years, not yet due and payable, is all together? That the not yet due and payable only applies to taxes after 2006? And that the not yet due and payable has nothing to do with taxes that came before 2006, but were not yet assessed? Yes, that is the position, that it's general taxes for 2006, and any years after that, which are not yet due and payable. If they wanted to, you know, this is something that they drafted at closing, and they could have drafted this any way they wanted. And if they wanted to draft it the way that First American is trying to make it read now, they would have just said, general taxes, which are not yet due and payable. The interpretation they're taking, essentially, takes out the 2006 tax, and subsequent years' language, and makes it meaningless. So that is why the Rones' interpretation of this exception makes more sense, and gives effect to all the language contained in the special exception. All right. If you wouldn't mind wrapping it up, we'll give you, as I indicated, we'll give you time to respond. And it might, in fact, be a rather lengthy response, depending on the amount of questions we have for First American. Okay. Well, as a matter of an overview here, First American seems to want to ignore the Inland case and the McLaughlin case, which I believe are very much on point and govern this case, and tends to look towards more like this universal law on title insurance. And says, you know, don't pay attention to that. This is the way things are done with title insurance. But this is a matter of state law, and it never does an adequate job distinguishing Inland and McLaughlin. And when the two cases are read in conjunction, they both reach the same result using, you know, similar reasoning. And the reasoning found in both McLaughlin and Inland is that something can be a lien just because there's the threat of the lien, and it may never materialize. Just like in McLaughlin, those inheritance taxes may never have materialized. In the present case, the back taxes may never have materialized. The county could have just, you know, gone on. Or after three years, I believe there's a statute of limitations. So that's the basis for the Supreme Court's definition of what is a lien and encumbrance. And then the other point that I've made in answer to your questions is that they could exclude this, and they had the ability to exclude it, and effectively misled my clients by if they meant to exclude it, they could have done it. And, in fact, that's what's stated right in McLaughlin. They said they had a duty to disclose the possibility of the inheritance tax, and it's not something that they didn't want to. When you phrase it that way, it almost sounds like there's a joint interest in your clients and First American Title having a shared interest in having the county forget about those 2004 and 2005 taxes. Both sides know that it was underassessed and both sides know that or realize that it's possible for them to go after or have a new assessment for 2006. But it seems like there's a suggestion that so long as you're covered by First American and First American is so long as it's covered, and, in fact, then it's okay because if the county never comes after us, we're fine. And yet, if the county does not want to come after us, then to that extent, your parties inform the county that, in fact, the property was underassessed. And to that extent, you might have triggered the very thing that you believe might never have happened. That's true. That's true. We did notify the county by certified mail that this property had been underassessed. And that was really that is what establishes the good faith belief of the Rones that they were not going to be liable for this. They said, okay, we will comply with the Section 270 and there won't be any liability. We thought that we were doing, you know, what the title company would have wanted us to do. That would be liability between you and the county, that at least your client would not be liable. They could go after the property. Right. I don't know why that is the case. Maybe because they just decide we've got to lean on this and, you know, we don't. No, my question goes to why do you think that that would insulate the Rones from giving notice that the property was underassessed in 2004, 2005, and 2006? Why that would insulate the Rones from having to pay for it? Why would they have to pay that tax? It goes to Justice Paddy's question. Why is that a good faith basis? Why would that insulate them from having to pay the taxes if the county says, you know, you're right, it is underassessed, and we're going to go ahead and properly assess it, as we should, because every taxpayer should bear its proper burden. It is based simply on the plain language of the property tax code in Section 9-270. And it says a charge for tax and interest for previous years shall not be made against any property for years prior to the date of ownership of the person owning the property at the time the liability for the omitted tax was first ascertained. Ownership, as used in this section, shall refer to bona fide legal and equitable title of interest acquired for value and without notice of the tax. Here's another question when you just read that that popped into my head, and that is, you, in reading that section, are reading it as if it could only apply in the future. That is, any assessment that comes out in the future, after I become owner in 2006, cannot be assessed against me. But that's precisely the opposite position you're taking here, where you're saying that this future assessment that occurred has to go back, has to be covered under this very same language, because it pertains to earlier than 2006. And so you're reading these two unrelated phrases in precisely the opposite ways. Well, there's a difference between back taxes and assessed. Now, there's no dispute that these taxes were assessed after closing in 2007. So they don't become back taxes until they're assessed. So whether you want to characterize them as back taxes or new assessments is disputable. Your Honor, in the absence of the Inland case saying that the threat, the possibility that the county can assess these back taxes is a lien, I would agree with you. But based upon the, you know, just the plain language of the Brown, the Supreme Court in Brown, and then as that definition was applied to back taxes in virtually an identical situation, there's no question that they were assessed afterwards. The fact that they are back taxes that relate to years before the closing, that under the plain language of the policy, it looks like they're covered based upon the definition. It's a definition of what is a lien. Go ahead and wrap up. Okay. First American knows how to, well, let me just get to the Section 155. You don't have to assess that, because I don't think the trial judge really even contemplated whether this was vexatious conduct on the part of First American given that First American won, right? Correct. So let's not deal with that. Let's get over the first hurdle. Okay. Let me interject. Is there anything that you contend under the property tax code that would have required your clients to have notified the county? I believe that Section 9-270, because it talks about... You read that as a requirement. Pardon? You read that as a requirement on the Roans to notify the county. Well, it says, the judge said the tax would continue to be assessed improperly. I understand that, but I'm asking a different question. A legal requirement on them to notify the county. Correct. If they continued to assess it as vacant land during their ownership, and that goes on for years, and then in the absence of this notice, the county could come back and say, pay us for these years where you owned it. And say, well, no, we gave you this notice. So I was insulating them for actually during the years in which they actually owned it. And I did... There's no legal requirement to do it. But in the absence of doing it, then they could come after... No, I understand that there are potential liability issues that pertain to... They're not notifying the county, but my question was a legal requirement in the first instance. Okay. Yes. In summary, the Roans went to great lengths. They weren't lying in the weeds on this. They believed in good faith that there was no liability here. They did what they thought they were supposed to do. And then they laid this all out for First American in several letters that went back and forth. And First American at all points said, if there's anything else you want us to consider, we'll look at it. And everything that's in these briefs pretty much are in those letters. And this case could virtually be decided based on those letters. What I would ask of this court is to reverse the trial court and enter summary judgments on counts one and two, and then remand for determination under count two in section 155. You'll get a chance to respond. Good morning, Your Honors. Good morning, counsel. My name is Jeff Corso for First American Title, and may this argument be pleasing to the court. I'd launch into my argument, but I'm going to address your first question. Let me begin with what I think is essential to their claim, and that is notice to First American Title. Now, I think there's, I can't be sure, but I think there may be agents for limited purposes. And the question is, did notice to the attorney that served as the issuing, I don't know what the position, agent for First American Title, in that he initiated the policy, did notice to him regarding the underassessed assessment of the real property involved in this case, serve as notice to First American Title, that if it waives those exceptions at closing, it does so at its peril? No, but I think your question is, did First American have notice that this property was underassessed? By virtue of his agent. And if he's not an agent of First American Title, tell me why he's not an agent. And I'm going to answer that question, I'm also going to answer the broader question of, did First American have notice, period, that this property was underassessed? The answer is no. Well, if they had notice at all, it came by virtue of the agent. If they had notice at all, it would be by virtue of the seller's attorney. Right. Okay. So what's the relationship? The first argument is, this is Kent Novick we're talking about. That's right. The first argument is, this is not alleged in the case. This is not an allegation in the declaratory judgment action. They did not frame this as an issue before the trial court. It comes up as an argument here in the appellate briefs, and it came up in the reply brief. And did he attach any letters to Mr. Novick to his pleadings below? In all likelihood he did. Well, that's part of his claims, isn't it? Part of his, or at least assertions regarding that. Did Mr. Sreenen attach to his complaint any letters to Mr. Novick? Or did he make reference to those letters in his complaint to Mr. Novick? The answer is no. He did not. I defend the complaint that was brought against us. And this complaint, as much as he tries to make this a McLaughlin case, he doesn't allege it is a McLaughlin case. He doesn't allege an implied contractual duty. There's no tort duty for an insurance company, for example, to go out and search property to determine whether there's potential incoate liens, which aren't liens at all, but are potential liens. Anything could be a potential lien. This is not a lien on the property for 04 and 05. Your very first question was, why didn't the Rones protect themselves for 2004 and 2005? They didn't have to. He read the statute to you. I'm going to read it again. This is, they didn't have to pay these taxes. This was a voluntary payment they made to the county that they never had to pay. They might even be able to go back and get their money back. The statute reads, a charge, this is the omitted assessments. And by the way, I do take issue with the terminology back taxes. This is an omitted assessment. It's not a back tax. A charge for tax and interest for previous years, this is section 9-270 of the property tax code. So it's 35 ILCS 200 slash 9-270. It's the section that deals with omitted assessments. And it's the section that says that the Rones would not have had to pay the 2004 and 2005 taxes. Quite literally, it reads, verbatim, a charge for tax and interest for previous years, as provided in section 270. Shall not be made against any property for years prior to the date of ownership, prior to the date of ownership, of the person owning the property at the time the liability for the omitted tax was first ascertained. And then it defines ownership as used in this section shall be held to refer to a bona fide legal and equitable titles for interest acquired for value without notice of the tax as they may appear by the deed or deed of trust mortgage certificate of purchase or sale or other form of contract. They are bona fide purchasers. They did not owe these taxes. And I have to tell you, I learned two new facts today. Actually, I learned two new facts on appeal. The first fact I learned new was during oral argument where he says the Rones notified the county that the taxes were underassessed. If you'll recall in my brief, I laid out the testimony of Denise Rone. I struggled like mad trying to get her to admit she had knowledge of the underassessment. It wasn't until their reply brief when they state the Rones admit that they had knowledge of the improper assessment at the time of closing. Boy, if the trial court knew that, we would have two new exceptions, which the court on de novo review can apply to avoid. So what other exception? It would be 3A. The policy does not cover defects, liens, encumbrances, adverse claims or other matters. A, created, suffered or assumed or agreed to by the insured claimant. So I couldn't get that admission at trial, but today I do because they voluntarily went to the county and paid taxes that they agreed to suffer. So you're just saying they stepped on a rake. Completely. Let's address that. We talked about risk, assuming risk. And what you're saying is that they should have challenged the taxes and suffered all the collateral consequences of that payment of attorney fees. It's a phone call. Hold on. It's not so easy to make that assertion because the county is going to want its due. No. The county knew that they were the new buyers. The county knew that they were the new owners in 2006 by virtue of their notice to them that it was under assessed. So the county knew that they were not responsible. If they had the same reading of 9-270 as you have. So it isn't such a simple thing to say, you know, we're not paying these taxes. They might have created liens and then they'd have to go to court and then they'd have to litigate it. And who knows, they might end up losing. It's $8,000. It might have cost them a lot less to just go ahead and pay it. So it's not such a simple matter. And in fact, they litigated this, which they felt was a better risk for them. Okay. The question in there is, I think, is the county assessed these taxes and therefore doesn't that suggest that the Rones would have to pay the taxes because they're a new owner? Or they shouldn't, you shouldn't be able to stand there and say they should not have paid the taxes and therefore they took on this liability on their own and we shouldn't be held liable. That is not your position to take. I'm saying this, that you shouldn't be able to say too bad for them. They paid it. Now it's a question of defending yourself. I do have a right to say that. You suffered those taxes and you shouldn't have suffered those taxes. Maybe you should say that to the county. I don't know that you should say that to the Rones. I can't. They're already paid. That sounds like Inland. No, no, no. This is not even Inland. We're Inland trying to bring in the county. Okay. This is not Inland. First off, this is where I wanted to start off my argument today. This fact pattern never gets to the appellate court. Why? Because there's only one county in the state of Illinois that can charge omitted assessments and that's Cook County. The county is over 3 million people. There are thousands of transactions out there currently where title companies have not excluded omitted assessments and they don't have to. Why? Because when a purchaser comes in and that omitted assessment is not already as of record, it's automatically excluded under the policy. Under what language? We'll just go through them one by one. We know the trial judge relied on 3D. That's what counsel says. I disagree with that. Okay. What did the trial judge rely on? The trial judge relied on 3D. The trial judge also relied on special exception B1. I thought the special exceptions were waived. No. The standard exceptions were waived. The policy looks like this. The standard exceptions are these. They're always waived. They're waived at pretty much every closing. It's a standard waiver. But the special exceptions exist. Special exception B1, general taxes for the year 2006 and subsequent years, which are not yet due and payable. This is an assessment in 2008. What they're trying to say is, no, it's for 2004 and 2005. They're not due and payable in 2004 and 2005. They don't become a lien on the property. Let's say he goes to the county clerk's office or the assessor's office and says, well, what year are these taxes for? Are they going to say 2008? They're going to say for 2004 and 2005. But they do not become a tax on the property. In fact, they're not even due until the second installment of 2008. In fact, the county can't even charge interest and penalties until the first day after the day in which they're due, which is the second installment of 2008. How do you distinguish the language in England in which the court says that the unexercised authority to impose what they call back taxes constitutes an encumbrance on the property at the time of the transfer of the property, even though they have not yet exercised the authority to assess those taxes? Frankly, Your Honor, it is the only reason we're here. I know, and I just have to investigate it. If this set of facts had occurred before the appellate court, before that case, there's no way they would make that holding. That holding is Rambo compared to this fact pattern. That particular language applies to the covenant that applies under a warranty between a buyer and a seller. And we're taking language out of that holding and we're trying to shoot Hornet into this case. It doesn't work. As I was saying, there are thousands of properties that are sitting out there, probably hundreds of thousands of properties out there, for which an omitted assessment will be charged and the homeowner will get it and say, I'm a bona fide purchaser, I don't have to pay it, and the county says you're right. Because when the tax bill goes to you, it says current occupant, because they have the current occupant, or current owner. That's the way this particular bill reads. It says deroan or current owner. So they just look on the rolls and they rely upon the current owner to say I'm a VFP because that's your defense. And they went ahead and paid it. But had they picked up the phone and called First American Title and said, we've got this issue, we would have said either call the county and tell them you're a VFP or we'll do it for you. Are they a VFP even though they gave notice? Well, that's the other thing. They would have been, but then they tell the county, we knew about it. And they just admitted that today. Is that inland where the judge wanted remand to see whether they had notice? Your Honor, I don't know if that's inland or not. I look at inland and it's a completely different fact pattern. I don't understand how inland applies here. I'm sorry, weren't there very similar circumstances? There was no taxing of record in inland. There were no back taxes that had been levied. There was no reassessment that had been taken place. There was no notice given at that time of any back taxes. And then they still held, as I said earlier. Inland held, the real holding of inland was that the purchaser could sue the seller for breaching the warranty deed, the covenant of no encumbrances under the warranty deed. The issue in that case was not is there insurance under a title insurance policy. I've got other exclusions that deal with this. So let me go through the exclusions. So you've got the special exception B-1. The special exception B-1, it turns on, at least according to the Roan's argument, is when it's talking about general taxes for the year 2006. And the question is whether you go to the assessor's office and they ask what are these taxes for. They're going to say general taxes for year 2004 and 2005. So that to the extent that it says general taxes for year 2006 and subsequent years, if these are general taxes for 2004 and 2005, then they don't fall under this exception. And I say who cares what the county assessor says. It's what the property tax code says. The property tax code says they become general taxes in 2008, the year in which they are assessed. They become a lien on the property on day one, January 1, of the year in which they are assessed. I don't care that their form reads 2004 and 2005. In fact, their form even says the taxes aren't due and payable until the second installment of 2008. So when you ask me the question what will the assessor say, the person standing behind the desk, I don't care. It's what the property tax code says. They don't become, they aren't even obligated to pay this. So you're on the second of two exceptions. Do you have more? That's B1. Now we go to the exclusions. So you've got general standard exceptions, which we waived. Special exceptions, which we didn't waive and still exist. And now we go to the exclusions. 3A, which I don't argue in the brief, but the oral argument gave me that ability where they voluntarily assumed it. 3B, not known to claimant, I'm sorry, not known to the company. Now, Mr. Shreenan stood before you and said First American knew about these omitted assessments. There's no evidence in the record that we knew about these assessments. And no one can infer it from anything in the record. We did not know about them because they don't exist. Well, what about Mr. Novit? We go back to Mr. Novit and his reasoning. Mr. Novit doesn't know they exist because they don't exist. Well, he knows that there's a possibility that, well, he knows that the property is underassessed. For 06. For 06. And it cannot be denied. It has to be inferred. No other conclusion can be drawn. That it's also underassessed for 2005 and 2004. Once the property was built, it was underassessed. How does Mr. Novit know that? That's not in the record. In other words, it doesn't reveal Mr. Novit's knowledge that this property It flows from being underassessed for 2006. It cannot be any other conclusion. There's no evidence in the record that Mr. Novit knew that there was no improvement to the property in any year other than potentially 2006 because it's the only year that was escrowed. Except that he There's no evidence. No one took his deposition. Okay. I mean, we can make educated guesses, but there's no evidence. And that was the plaintiff's decision. In any event, the trial judge didn't rely on this absence of evidence. It relied on the strict language of the policy to claim or determine that it fell under either the exception or the exclusion. Trial court read Mrs. Roan's, basically Mrs. Roan's and to some extent Mr. Roan's deposition looked at the pleadings and said it doesn't state a coverage action under the D.J. Act, under 701. Not known to the company, not recorded in the public records. Clearly it wasn't recorded in the public records, but known to the insured claimant, which I struggled at trial court and I'm just, and they admitted in the reply vote, thankfully. Finally, that's a gone issue. 3D, attaching or created subsequent to the date of the policy. This is the best one. This is 3D. Is this a lien which attached or created after August 1, 2006? And this is where Inland comes in. Because Inland talks about an encumbrance that could be inchoate or unrealized at the time. But we exclude it. We exclude coverage. In other words, if the seller in Inland had said, here's your warranty deed, but I exclude any defects that attach to the property after the date of closing, then Inland would go a different way. And that would be the way to distinguish Inland. In other words, it is undisputable under the property tax code that these taxes don't attach to the property until January 1, 2008. Let me ask you a quick question for my own edification. And that is, what is Mr. Novit's relationship to First American Title by virtue of whatever he's claimed to be? None. They can claim he's an agent all they want. There's no agency contract of record. He is the seller's attorney. He ordered the title policy. There's no agency contract that's been admitted into evidence in the record. I don't even know that one exists. I'm not an agent of First American Title, but I could order title insurance on behalf of a seller for First American. There's no evidence in the record. I guess my biggest issue with this case is this fact pattern doesn't make it to the courts, into the appellate courts at least. It doesn't even make it to the trial courts. And the reason is because these omitted assessments, these buyers are always bona fide purchasers for value without notice of the omitted assessments. They voluntarily made this payment. If this case were to ultimately end up in a holding that's adverse to First American Title, it opens the floodgates on title insurance policies in this state. It will chill property sales. Well, either that or it will spur First American Title to modify its title insurance policy. Not just First American. The entire American Land Trust Association, all the title companies would have to modify their nationwide ALTA policy. That happens on occasion. It does. I'm not going to say it doesn't, but it's why every single court in other jurisdictions has concluded omitted assessments are not covered. Give us one case. I did. What case? Oh, yeah, you did. Those are out of state. I don't expect the court to rely on them for anything but persuasive value, but I think you should follow along. I had one more question because you've kind of tried to distinguish. You didn't say anything about McLaughlin. McLaughlin talks about the purpose of title insurance and the duty and the responsibility of the person who is giving title insurance to search the records, to examine the law and to draft their contract in an expert way to make clear what they are. Sure. The holding in McLaughlin is that there is not a tort duty by an insurance company, title insurance company. By the way, it's called title insurance. It's really an indemnity contract, which is different than insurance, but a title policy or title insurer under McLaughlin has a limited implied contractual duty to do a search where the beneficiary of the title policy, the name insured, is relying upon the title insurance company to do that search. I wrote some notes from just reading it and it said the issuance of the policy is predicated upon the careful examination of the exercise of title and exhaustive study of the applicable law and the exercise of expert contract draftsmanship. The insurer has the duty to search the records and examine the applicable law before issuing the commitment in the policy. Justice Lankin, we did that. We do that. Here's how we do that. You tried to limit what it said and it seems to be much more exhaustive than what you're just saying. It's a limited implied contractual duty. It's not a duty to go out and look for possible liens. It's a duty to look for liens that are extant on the record. That omitted assessment, when we go search, it's not going to show anywhere. We don't know that it's going to be a lien and quite frankly, we don't have to worry about it because we get the benefit of the statute that says you're a lien if you ever get assessed. That's why this case never makes it to the courts. They went and voluntarily made this payment. I don't even know why they did that. They assumed this obligation, which is excluded under 3A, which I couldn't get them to admit at trial court. So let me get this right. To some extent, you're saying that First American title is protected by virtue of that 2-970 treating the patient. Therefore, your policy doesn't have to cover a risk that didn't exist for them. That's one way. We've also got other exclusions. It's covered under so many different exclusions. You could pick and choose and on de novo review, you're entitled to do that. Especially with the new admission. So would you limit your comments to three minutes, please? First of all, how do we get to the agent? How do we get to the knowledge to First American? Knowledge to First American is two ways. One, through the McLaughlin case and as far as the limited implied contractual duty, I never found that anywhere and he doesn't cite any authority. It's not in McLaughlin. But if you look at the title policy that's attached to it, it says that they were the agent. They never denied it. They never came in with anything that said they weren't the agent. So there's two ways. McLaughlin and the title policy, which is part of the record here, says that they are an agent. The other thing that, one, it is part of the record that we notified the county. And counsel was aware of that. But the thing that really bothered me when I was sitting here is we filed this as a deck action, not as a breach of contract action. Had we just paid the taxes and went after them, it would have been a breach of contract. It was a deck because we brought this action in June. Taxes weren't due. As he said, they're not due until the second installment of 08, which is in the fall. We brought it in June. There was correspondence between them. He says you guys may not be liable for this. You know what? That was my reading of 9-270 also. But then if I'm reading inland, and I did talk to the county, and they said no, look at inland. And I'm like, okay. Counsel made the same mistake I did. Well, here's what really bothers me. We told them. I mean, we laid this out for them. And they said the wrongs in the correspondence. You're talking about First American or the county? It's not part of the record. Well, I was talking about First American. But I did personally go talk to the county. I mean, it wasn't just a phone call. I personally went and talked to them and showed them the certified letter and this, that, and the other thing. And they said no, you had notice of it. And in fact, this letter shows that you had notice of it. And I'm like, okay. But what is their duty under the insurance policy? We're like, hey, guys, the county says we owe these back taxes. And in my letter to them, I say in my first letter in the claim, I say we don't. Is the letter part of the record? Yes. Can you give us the site? Well, all right. This is what I filed or sent to them. And I copied Kent Novot on it, by the way. No, no, it's part of the record. It is part of the record. This is my summary judgment. Oh, your summary judgment motion? Yeah. It's an appendix or an exhibit? It is an exhibit to the summary judgment motion. And I say I represent the insureds. We're notifying them. Taxes for 2000-2005 are the tax bills for your references. Insured purchased in 2006. Insureds do not believe they are liable for the taxes based upon their status as a good faith purchaser for value without notice of the tax. And then cited that language. And this is what gets me as far as they just gave it the back of the hand. You know, they sent a letter that just said, you know, well, under the schedule B-1, these weren't due and payable. I wrote back the letter and said they were due and payable. Or due and payable is not the issue here. They predate 2006. They wrote the letter back. Just, oh, let me explain more. And then they just repeated the same exact thing. So it appears they took the, like, let's just deny this and we'll come up with, you know, an explanation for it later. But First American, I believe, under the policy, when we said, hey, we got this problem, they shouldn't be able to just say, go take care of it. You know, yeah, yeah, you're right. You don't have any liability. So, you know, don't pick up the phone. Let me ask you this. There was direct authority, counsel cited, to outside jurisdiction, foreign jurisdiction cases that were direct authority in his favor. Yes. Do you have any direct authority on all fours on this particular issue that goes in your favor? Well, other than Inland and McLaughlin. I don't know if they're on all fours because they concern the buyer and sellers. Well, McLaughlin, at least, involves a title insurance company. But you will concede that if we were to adopt your position that it would be a tsunami in the title insurance company? No. One, we're only talking about Cook County. One, this is easily determinable. Easily. This was a residential condo that was assessed as vacant land. They could have easily determined this. Plus, their agent knew all about it. The easier it is for them, well, in fact, you can see that your clients already had determined that. Exactly. Through the public records. All right. And I guess that's why you're saying that's why. Because of the absence in the proration agreement of the years 2004 and 2005. Because under this section, you are good faith purchasers. And therefore, you are not obligated to pay that. And you would only be obligated to pay 2006. And that was only a clear title. That's correct. Good enough. Essentially what you said was this wasn't a situation where we figured this out afterwards, how are we going to get the title policy. We looked at this issue before and concluded that we weren't going to be liable. And then decided to abide by section 9-270. First American, when we notified them, should have stepped in and protected our interest. They had plenty of opportunity to do so. And we said we would cooperate with you in every way to do this. And then there was some reference to the property tax code. Again, I'm relying on the Illinois Supreme Court definition of Brown. He referred to Inland as a Rambo case. Inland has been around for almost 30 years. Do you find any significance that it's the only type of its kind? Well, I don't think it is. It's cited through 2009. And the same with McLaughlin. McLaughlin has been around for over 30 years. And there's been no criticism of these cases. So I don't see this case as any different than McLaughlin. So I appreciate your questions. I appreciate the fact that you looked at this so thoroughly. And thank you for the Court's attention.